TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal Bar No. 270756)
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Assistant United States Attorneys
Violent & Organized Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7964
     Facsimile: (213) 894-0141
     E-mail:    joseph.axelrad@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-296-JFW |
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: November 10, 2021 |
| EDGAR ADRIAN HERNANDEZ LEMUS and JUNIOR ALMENDAREZ MARTINEZ, | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorneys Jeffrey M.

//

//

Chemerinsky and Joseph D. Axelrad, hereby submits its trial memorandum in the above-captioned case.

Dated: November 3, 2021          Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

  */s/ Joseph Axelrad*
JOSEPH D. AXELRAD
JEFFERY M. CHEMERINSKY
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   STATEMENT OF THE CASE**

    **A.   Trial Status**

    The criminal trial of defendants EDGAR HERNANDEZ LEMUS ("LEMUS") and JUNIOR ALMENDAREZ MARTINEZ ("ALMENDAREZ") is set for November 10, 2021 at 8:00 a.m.[1]

    **B.   Summary of Charges**

    Defendants LEMUS and ALMENDAREZ are both charged with violations of the following federal criminal laws: (1) Conspiracy to Receive, Possess, Conceal and Dispose of Money from a Demand for Ransom for the Release of a Kidnapped Person, in violation of 21 U.S.C. § 371; and (2) Receive, Possess, Conceal and Dispose of Money from a Demand for Ransom for the Release of a Kidnapped Person, in violation of 18 U.S.C. § 880.

    **C.   Summary of Conduct**

    These charges arise out of defendants LEMUS and ALMENDAREZ, as co-defendant Martinez's, participation in a conspiracy to collect ransom demand money in exchange for the release of kidnapped victims in Mexico. Specifically, co-conspirators in Mexico would approach individuals wanting to cross the border from Mexico into the United States and offer to smuggle that individual across the border in exchange for a fee. However, rather than smuggling the person across the border, the co-conspirators would hold that person hostage for ransom. The co-conspirators would communicate ransom demands to the hostage's family members, stating that they would require a ransom payment in order to release the hostage. The co-conspirators would

---

[1] Defendant Francisco Javier Hernandez Martinez ("Martinez") pled guilty on September 7, 2021. (Dkt. 45.)

arrange for the hostage's family member to deliver the ransom payment at various pre-arranged locations in Los Angeles County, often large-box stores such as Walmart, Target, and Loews.

Defendants LEMUS and ALMENDAREZ, along with co-conspirator Martinez, would travel to these stores to pick up ransom payments from the family members of the kidnapped victims.  During many of the ransom pickups, the family members of the kidnapped victims remained on the phone with members of the conspiracy who would direct them towards defendant LEMUS or co-conspirator Martinez – who were themselves often on the phone during the ransom pickups.  At these stores, defendants LEMUS and ALMENDAREZ, along with co-conspirator Martinez, would enter and collect, or attempt to collect, ransom payments from kidnapped victims' family members.  The ransom payments picked up by defendants ranged from $12,000 to $30,000 in cash.

After the ransom pickups, defendants would use Uber to transport the money, before eventually sending the money to co-conspirators in Mexico via MoneyGram.

In total, at trial, the government intends to present evidence of approximately five kidnappings for ransom and one attempted ransom pickup.  For each of these events, the government intends to present the testimony of at least one kidnap victim and one ransom paying victim.  For four additional ransom pickups, the government intends to present only cell site evidence.

The following are the ransom pickups, and attempted ransom pickup, for which the government intends to present evidence:

- March 29, 2021, ransom pick up at Target, in Southgate, California;

- March 29, 2021, ransom pick up at Walmart, in Southgate, California;
- April 20, 2021, ransom pick up at Walmart, in Southgate, California;
- April 28, 2021, ransom pick up at Walmart, in Southgate, California;
- May 6, 2021, ransom pick up at Walmart, in Paramount, California;
- May 24, 2021, ransom pick up at Target, in Southgate, California;
- May 26, 2021, ransom pick up at Walmart, in Paramount, California;
- May 31, 2021, attempted ransom pick up at Loews, in Pico Rivera, California;
- May 31, 2021, ransom pick up at Walmart, in Los Angeles, California;
- June 1, 2021, ransom pick up at Target, in Southgate, California;

In addition to the ransom pickups, a few other events will be important to the government's presentation. Most notably, on February 15, 2021, defendant LEMUS and ALMENDAREZ, along with co-conspirator Martinez were stopped by law enforcement while driving in Gardena, California. Following a search of the vehicle, law enforcement discovered, among other things, over $50,000 in cash contained within a red bag.

The government also intends to present evidence related to search warrants conducted at the time of defendants' arrest when, the evidence will show, defendant LEMUS and co-conspirator Martinez were

attempting to flee to Mexico. During a search of the house at which defendant LEMUS and co-conspirator Martinez lived, law enforcement discovered items of clothes consistent with surveillance camera footage from inside the stores during ransom pickups. Law enforcement also discovered a series of ledgers which had been destroyed, but subsequently reconstructed by law enforcement. Cell site evidence will show that these ledgers, and the dates contained within the ledgers, appear to document additional ransom pickups, dates, and the amount of money obtained.

### D. Summary of Evidence

At trial, the government will present evidence regarding the following ransom related events:

| Ransom Event | Evidence To Be Presented |
|---|---|
| March 29, 2021, ransom pick up at Target, in Southgate, California; | Cell site evidence |
| March 29, 2021, ransom pick up at Walmart, in Southgate, California; | Testimony of kidnap victim Daniel Alfredo Chavez Duarte; testimony of family members Martha Rocio Chavez Duarte and Jorge Sandoval; cell site evidence placing defendant LEMUS at this location |
| April 20, 2021, ransom pick up at Walmart, in Southgate, California; | Testimony of kidnap victim Maribel Lopez Altamarino and ransom victim Alberto Carillo; surveillance camera footage; cell site evidence placing defendant LEMUS at this location |
| April 28, 2021, ransom pick up at Walmart, in Southgate, California; | Reference on ledger located in residence of LEMUS and Martinez; cell site evidence placing defendant LEMUS at this location |
| May 6, 2021, ransom pick up at Walmart, in Paramount, California; | Reference on ledger located in residence of LEMUS and Martinez; cell site evidence placing defendant LEMUS at this location |

| | |
|---|---|
| May 24, 2021, ransom pick up at Target, in Southgate, California; | Reference on ledger located in residence of LEMUS and Martinez; cell site evidence placing defendant LEMUS at this location |
| May 26, 2021, ransom pick up at Walmart, in Paramount, California; | Testimony of kidnap victim Elidet Campo Carbajal and ransom victim Jorge Luna De Olla; reference on ledger located in residence of LEMUS and Martinez; cell site evidence placing defendants LEMUS and ALMENDAREZ near this location; surveillance camera footage showing defendant LEMUS's Ford truck at the locations |
| May 31, 2021, attempted ransom pick up at Lowe's, in Pico Rivera, California; | Testimony of ransom payor Juan Juarez-Lopez; physical surveillance of defendants LEMUS and ALMENDAREZ at the store |
| May 31, 2021, ransom pick up at Walmart, in Los Angeles, California; | Testimony of ransom payor Juan Juarez-Lopez; reference on ledger located in residence of LEMUS and Martinez; cell site evidence placing defendant LEMUS at this location; surveillance camera footage; physical surveillance of defendant LEMUS at the store |
| June 1, 2021, ransom pick up at Target, in Southgate, California; | Testimony of kidnap victims Juan Carlos Felix and Jorge Calderon; testimony of ransom victim Jose David Felix Morales; reference on ledger located in residence of LEMUS and Martinez; physical surveillance of defendant LEMUS picking up ransom and providing it to defendant ALMENDAREZ |
| June 1, 2021 ransom drop off | Physical surveillance |

The government also intends to present evidence regarding the following additional events:

- February 15, 2021 Traffic Stop of LEMUS, ALMENDAREZ, and Martinez by Gardena PD – Gardena PD Officer Natalie DiAngelo will testify that LEMUS, ALMENDAREZ, and Martinez were the subject of a traffic stop; during a consent search of the car Office DiAngelo recovered over $60,000 in cash; and documented the cell phone numbers of LEMUS and ALMENDAREZ

- June 7, 2021 Arrest of LEMUS and Martinez – SA Michael Fukuda will testify regarding LEMUS and Martinez's apparent flight to Mexico, the packed bags found in their truck, and the cell phone that appeared to be programmed directions to a location in Mexico.
- June 7, 2021 Search Warrant of LEMUS and Martinez's Residence – SA Gary Wallace will testify to various physical exhibits recovered during the search, namely, a pair of red shoes that correspond to what LEMUS wore during the May 31, 2021 attempted drop;  a jacket matching what LEMUS during the May 31, 2021;  a long sleeve bluish gray shirt matching what LEMUS wore during the April 20, 2021 exchange; a jacket matching what LEMUS wore on June 1, 2021 at the Target exchange; a gray t-shirt with a rectangle that MARTINEZ wore on May 31, 2021; and various pieces of torn paper that, when put together, formed a series of ledgers that correspond to dates and amounts of ransom payments.

Other items of evidence will also be presented as part of the government's case, including:

- Border crossing records showing the Ford F-150, Lic. 46428L1, used by LEMUS, ALMENDAREZ, and Martinez at many of the ransom pickups was also used to cross the United States – Mexico border on the following dates:  March 26, 2021; March 28, 2021; April 16, 2021; April 18, 2021; May 7, 2021; May 29, 2021; May 30, 2021; May 31, 2021; June 3, 2021; and June 4, 2021.  These records will further show that defendant LEMUS was the driver of the F-150 truck during many of these border crossings.

- Records of MoneyGram transfers by defendant ALMENDAREZ on the following dates within the conspiracy: February 9, 2021; February 24, 2021; March 10, 2021; March 18, 2021; March 29, 2021; April 15, 2021; May 3, 2021; May 7, 2021; May 20, 2021 for $1,500; and June 1, 2021.
- A June 13, 2021, jail call by defendant LEMUS during which he admits that he picked up money.
- As set forth below, the government will offer defendant ALMENDAREZ's post arrest interview either through a stipulation or through SA Michael Fukuda. During this interview defendant ALMENDAREZ stated: he and knew defendant LEMUS and co-conspirator Martinez; as to the traffic stop on February 15, 2021, the money found in the car was Martinez's money, which Martinez said was from construction and the sale of rotisserie chicken; re an incident on June 1, 2021, in which defendant ALMENDAREZ was riding in an Uber car, he was transporting a package to a location and knew something bad would happen if he was caught with the package; he had an idea of what was in the packages obtained from inside the store and believed the packages contained money, but he never asked and never looked; he would send money via Moneygram to people in Mexico, but he did not know the people to whom he was sending money, and he was paid to send money to people in Mexico.[2]

---

[2] The government has proposed a testimonial stipulation with selected sanitized excerpts of defendant ALMENDAREZ's post-arrest interview in order to avoid any issues presented by Bruton v. United States, 391 U.S. 123 (1968). Given that the government is choosing to present defendant ALMENDAREZ's interview through either a stipulation or through agent testimony in order to protect defendant LEMUS's rights, defendants should not be permitted to argue that
*(footnote cont'd on next page)*

**E. Defendant ALMENDAREZ's Post-Arrest Interview and Status of Stipulation**

The government has proposed a stipulation in an effort to streamline the presentation of evidence in this case. Specifically, the government has a proposed a testimonial stipulation of SA Michael Fukuda as to various sanitized excerpts of defendant ALMENDAREZ's post-arrest interview. A copy of this stipulation is attached hereto as Exhibit A.

Defendant ALMENDAREZ's counsel has provided a signed copy of the stipulation. Defendant LEMUS's counsel has indicated that he objects to one segment of the stipulation, specifically, the final two lines of page 2 of the Stipulation, which state "Defendant ALMENDAREZ stated he knew something bad would happen if he was caught with the package." The government has told defendant LEMUS's counsel to raise such objection with the Court because the government would seek to admit such material irrespective of whether there is a stipulation. In the event defendant LEMUS does not sign the stipulation, the government will either enter the stipulation into evidence with only defendant ALMENDAREZ's signature, which would be appropriate given that the evidence is being only offered against defendant ALMENDAREZ, or call an agent to testify as to the sanitized version of the interview, with appropriate redactions and omissions as to defendant LEMUS. Either way, it will be appropriate at the time such evidence is admitted for the Court to provide a limiting

---

defendant ALMENDAREZ did not say these statements or that the translation of his statements are incorrect. Such argument would mislead the jury and would require the government to play the statements. This is especially true as neither defendant has challenged the translation for the interview.

8

instruction that the evidence is only to be considered as to defendant ALMENDAREZ.

### F.   Other Evidentiary Issues

#### 1.   Witnesses Requiring Interpreters

Several victim witnesses will testify through a Spanish-language interpreter.  The government has scheduled certified Spanish-language interpreters to be present for their testimony.

#### 2.   Details Regarding Abuse by Kidnappers

The government will instruct the kidnapped victims to omit certain graphic details, including of sexual abuse, from their testimony.  Insofar, as defense counsel challenge their accounts or whether they were in fact held against their will, such details may become relevant and necessary.

#### 3.   Spanish Language Translations

Pursuant to the Court's Criminal Trial Order, the government provided all translations to defense counsel at least 15 calendar days before trial, defense counsel has raised no objections regarding any of these translations.

## II. CONCLUSION

The government hereby respectfully requests leave to file supplemental trial memoranda before or during trial, as it may become appropriate.