1 | TRACY L. WILKISON
United States Attorney
2 | SCOTT M. GARRINGER
Assistant United States Attorney
3 | Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal. Bar No. 270756)
4 | JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Assistant United States Attorney
5 | Violent and Organized Crime Section
     1300 United States Courthouse
6 |      312 North Spring Street
     Los Angeles, California 90012
7 |      Telephone:  (213) 894-6520
     Facsimile:  (213) 894-0141
8 |      E-mail:      jeffrey.chemerinsky@usdoj.gov
                    Joseph.axelrad@usdoj.gov
9 |
Attorneys for Applicant
10 | UNITED STATES OF AMERICA

11 |                  UNITED STATES DISTRICT COURT

12 |            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 | UNITED STATES OF AMERICA,            No. CR 21-296-JFW-1

14 |                Plaintiff,            GOVERNMENT'S SENTENCING POSITION

15 |        v.                            Sentencing Date:    January 10,
                                        2022
16 | EDGER HERNANDEZ LEMUS,

17 |                Defendant.

18 |

19 |       Plaintiff United States of America, by and through its counsel

20 | of record, the United States Attorney for the Central District of

21 | California, hereby submits its position with respect to sentencing

22 | for defendant EDGAR HERNANDEZ LEMUS.

23 | //

24 | //

25 |

26 |

27 |

28 |

1        The government's position is based on the attached memorandum of

2   points and authorities, the files and records in this case, and such

3   additional evidence and argument as may be presented at the hearing

4   on this matter.

5    Dated:   January 3, 2022           Respectfully submitted,

6                                       TRACY L. WILKISON
                                        United States Attorney
7
                                        SCOTT M. GARRINGER
8                                       Assistant United States Attorney
                                        Chief, Criminal Division
9

10                                      */s/*
                                        _____
                                        JEFFREY M. CHEMERINSKY
11                                      JOSEPH D. AXELRAD
                                        Assistant United States Attorneys
12
                                        Attorneys for Plaintiff
13                                      UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3    Defendant Edgar Hernandez Lemus ("defendant") was a key part of

4  a brutal kidnapping for ransom scheme.  During this scheme, numerous

5  victims were subjected to horrific abuse.  The horror of the

6  kidnappings and ransom payment is a trauma that these victims will

7  never forget, as one of the victims even testified at trial.  The

8  government took a cautious approach at trial and de-emphasized the

9  brutality of the kidnappings for the jury.  For example, the jury did

10  not hear about the horrific sexual abuse that two of the trial

11  witnesses suffered during the kidnapping.  Additionally, the jury did

12  not hear the graphic details about the beatings, the food

13  depravation, and the threats that other victims suffered.  The jury

14  also largely did not hear details about how the ransom-paying victims

15  emptied their savings accounts, and in some instances borrowed money

16  and went into debt, in order to pay the ransom demands.  However, at

17  sentencing, the Court should consider all of these facts in

18  fashioning an appropriate sentence and holding defendant fully

19  accountable for all of the harms of his co-conspirators.  Defendant's

20  essential role in the conspiracy means that he shares culpability for

21  those horrific harms.

22    Although defendant maintained a geographic distance from the

23  kidnappings, his role was essential to the scheme – along with his

24  co-conspirators, he would travel to ransom drop locations, pick up

25  ransom money in the United States, and then deliver it back to

26  Mexico, either personally or through other co-conspirators.

27  Defendant cannot now credibly claim or feign ignorance as to the

28  kidnapping scheme he was a part of – one of the victims testified at

1   trial that on April 20, 2021, while handing defendant a bag filled

2   with ransom money, he desperately asked defendant where his wife was.

3   If he was not already on notice prior to that date, he certainly was

4   from that point forward.  Nonetheless, he persisted in assisting the

5   kidnapping scheme with numerous payments thereafter.

6        Although the Court heard from 11 victims at trial, the true

7   number of victims is indisputably considerably higher as demonstrated

8   by the ledger of ransom payments found at defendant's residence, the

9   cell site evidence placing defendant's cell phone at numerous

10  suspected ransom payments, and the fact that defendant was with co-

11  conspirators Javier Martinez ("Martinez") and Junior Almendarez

12  ("Almendarez") on February 15, 2021 when they had $60,000 in cash in

13  the vehicle.  The reality is that because of the nature of this crime

14  – preying upon a poor migrant community – many victims never come

15  forward.  For this reason, an appropriate sentence in this case, for

16  a crime that is horrific but difficult to prosecute, should serve the

17  goals of general deterrence.

18       Taking all of these facts into account, the government

19  respectfully recommends that the Court impose an above Guidelines

20  sentence of 10 years' imprisonment, followed by 3 years' supervised

21  release, $125,980 in restitution, and a special assessment of $300.

22  The government believes such a sentence is sufficient but not greater

23  than necessary to accomplish the goals set forth in 18 U.S.C.

24  § 3553(a).

25  **II.   STATEMENT OF FACTS**

26       A summary of the relevant facts is set forth in the Presentence

27  Investigation Report ("PSR"), paragraphs 10-62.  As established at

28  trial in this matter, defendant and his co-conspirators Francisco

1    Martinez and Almendarez repeatedly entered various large stores in

2    order to collect ransom payments to release kidnapped victims in

3    Mexico.   The scheme was both brutal and prolific.   Indeed, victims

4    were brutally assaulted, including female victims who were raped.

5    Defendant's repeated actions prolonged the kidnapping conspiracy by

6    continuously funneling the proceeds back to Mexico.   Further relevant

7    details are discussed below in reference to specific sentencing

8    factors.

9    **III.  RESPONSE TO THE PRESENTENCE INVESTIGATION REPORT**

10         **A.    Probation's Guidelines Calculation**

11         Probation concluded that defendant has a total offense level of

12   17.   PSR, ¶ 72.   This calculation is based on the following:

13         Base offense (U.S.S.G. § 2B1.1)                          6

14         Loss greater than $95,000 (§ 2B1.1(b)(1)(E))          +8

15         Financial Hardship (§ 2B3.1(b)(2)(A)(iii))           +2

16         Scheme Outside the United States (§ 2B1.1(b)(10)(B))   +2

17         Risk of death or serious bodily injury (§ 2B1.1(b)(16)) +2

18         **B.    Government Response**

19              1.   <u>Additional Offense Characteristics and Enhancements</u>

20         In addition, the government believes that a 2-level role

21   enhancement should apply, based on defendant's supervision and

22   management of another participant.   Defendant, along with Martinez,

23   jointly managed the ransom collection operation.   The evidence shows

24   that they jointly delegated tasks to Almendarez, including sending

25   money to Mexico through Moneygram and the transportation of the

26   ransom proceeds on June 1, 2021 in an Uber.   Defendant's role is

27   further shown by the fact that all phone contacts with Mexico

28   appeared to go through defendant and Martinez, rather than through

                                    3

1  Almendarez.  United States v. House, 883 F.3d 720, 724 (7th Cir.

2  2018) ("[T]he primary goal in applying § 3B1.1 should be to make a

3  'commonsense judgment about the defendant's relative culpability

4  given his status in the criminal hierarchy.'").

5       Almendarez's post-arrest arrest interview showed defendant's

6  management of him.  For example, in reference to Almendarez's June 1,

7  2021 transportation of ransom proceeds, Almendarez explained "they

8  [referring to Lemus and Martinez] gave it to me and told me that an

9  Uber was gonna pick me up."  The agent followed up, "who gave you the

10  … package?" and Almendarez responded "Edgar," referring to defendant.

11  (Ex. A, p. 40-41.)  In describing money transfers to Mexico,

12  Almendarez explained that defendant and Martinez would ask him to

13  transfer money and then pay him for it.  (Id., p. 60.)  The PSR also

14  references another individual, K.M., who defendant recruited and had

15  send money transfers to Mexico on two occasions.  (PSR, ¶ 45.)  The

16  trial testimony also established that FBI surveillance watched as

17  defendant and Martinez drove Almendarez to a Moneygram location to

18  transfer money.  As the Court is aware, Almendarez made such money

19  transfer on approximately 10 occasions.

20       All of this conduct shows defendant's direction and management

21  of others and is sufficient under the Guidelines.  U.S.S.G. §3B1.1,

22  comment. (n.2); see also United States v. Lewis, 976 F.3d 787, 798

23  (8th Cir. 2020) ("A defendant may be subject to the enhancement even

24  if he managed or supervised only one participant, limited to a single

25  transaction." (citation omitted)); United States v. Savage, 885 F.3d

26  212, 229 (4th Cir. 2018) ("[T]he enhancement is justified if the

27  defendant managed or supervised the activities of at least one other

28  person in a scheme that involved five or more participants."

4

1   (citations omitted)); United States v. Ranjel, 872 F.3d 815, 820 (7th

2   Cir. 2017) ("The enhancement applies if the defendant managed or

3   supervised 'one or more other participants' in criminal activity that

4   involved five or more people."); United States v. Craig, 808 F.3d

5   1249, 1259 (10th Cir. 2015) ("The Guideline requires only a

6   conclusion that [the defendant] supervised at least one such

7   participant; it does not require the court to identify specific

8   examples." (citations omitted)).[1]

9        The adoption of the Plea Agreement's calculations plus the

10  application of the role enhancement gives defendant a total offense

11  level of 22.

12       C.   **Criminal History Calculation**

13       Probation concluded that defendant has no criminal history

14  points, resulting in Criminal History Category I.  PSR, ¶ 88.  The

15  government agrees with this calculation.

16  **IV.  Analysis of § 3553(a) Factors**

17       A.   **Legal Framework**

18        "All sentencing proceedings are to begin by determining the

19  applicable Guidelines range," which serves as "the starting point and

20  the initial benchmark" for determining a reasonable sentence.  United

21  States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (internal

22  quotation marks and citation omitted).  The parties should then be

23  given an opportunity to argue for what they believe is an appropriate

24  sentence.  Id.  Following argument by the parties, the Court must

25  consider each of the sentencing factors listed in 18 U.S.C.

26

27       [1] There were significantly more than five individuals involved.
    For example, in addition to the three co-conspirators in the United
28  States, in Mexico, there were the recruiters, the individuals who
    posed as coyotes, and the multiple kidnappers.

5

1 § 3553(a), including the applicable Guidelines range, "to decide if

2 [those factors] support the sentence suggested by the parties."  Id.;

3 see also Gall v. United States, 552 U.S. 38, 49 (2007).  In the end,

4 the Court must impose a sentence that is "sufficient, but not greater

5 than necessary," to reflect the offense's seriousness, to promote

6 respect for the law, and to provide just punishment; to afford

7 adequate deterrence; to protect the public; and to provide the

8 defendant with needed educational or vocational training, medical

9 care, or other correctional treatment.  See 18 U.S.C. § 3353(a);

10 Carty, 520 F.3d at 991.

11     **B.   The § 3553(a) Factors**

12     The government submits that a sentence of 10 years' imprisonment

13 is appropriate under the circumstances.  The violent, terroristic

14 nature of the criminal conduct in which defendant was involved cannot

15 be overstated.  Victims of these kidnappings will remain traumatized

16 for their entire lives.  For example, victim E.C. was forced by the

17 kidnappers to shower and, as she showered, a kidnapper "used a

18 firearm to open the curtain of the shower."  The kidnapper then raped

19 her.  (PSR, ¶ 60.)  When he finished raping her, the kidnapper held a

20 gun to her chest and offered to shoot her in the chest.  (Id.)

21 Victim M.A. was subjected to similar horrific abuse.  She too was

22 raped by the kidnappers.  With her husband (A.C.) on the phone, she

23 was beaten and her husband heard her plead "don't hit me anymore."

24 The kidnappers held a gun to her head while they called her husband

25 to demand money.  The kidnappers also called M.A.'s brother and

26 threatened to harm M.A.'s young daughter, who the kidnappers

27 described as pretty.  All of the victims described being zip-tied by

28

1  their hands and feet and held at gunpoint.  Victim J.M. described

2  being beaten by the kidnappers while on the ground.

3      Further, it was not only the kidnapped victims who were

4  traumatized by these events.  The ransom paying victims were forced

5  to empty their savings accounts and, sometimes, borrow money to pay

6  the kidnappers.  Beyond the emotional strain, victims with very

7  limited financial means will also suffer financial difficulties based

8  on the ransom payments they made.  These crimes also preyed upon the

9  vulnerable – immigrants in the United States and those with limited

10 financial means in Mexico looking to cross into the United States.

11 The helplessness that the family members in the United States felt in

12 trying to collect money for the ransom only furthered this emotional

13 suffering.

14     Defendant, who came face to face with the ransom paying family

15 members, cannot claim to be entirely ignorant of the damage he was

16 inflicting.  As mentioned above, one of the ransom payers

17 specifically asked defendant about his wife.  Defendant structured

18 his ransom collections in a way that showed he knew what he was doing

19 was unlawful and wrong.  He took measures to limit his contact with

20 the ransom payers.  As shown by one of the videos, he pointed to

21 where he wanted the victim to place the bag containing cash and then

22 quickly grabbed the bag and walked out.  The recommended sentence

23 fully accounts for defendant's role in the United States.  Indeed, if

24 defendant was one of the kidnappers and physical abusers, a sentence

25 significantly greater would be warranted.

26     The above Guideline sentence also accounts for the entire scope

27 of defendant's conduct.  Although the Court heard from 11 victims at

28 trial, there are undoubtedly many more unidentified victims, too

7

1   afraid to come forward, which the Court may consider in assessing the

2   § 3553 factors.  The existence of such additional victims is

3   reflected both in the detailed ledger found in defendant's residence

4   (which only begins in late-April 2021), the cell site evidence, and

5   the fact that the three conspirators possessed more than $60,000 in

6   cash in February 2021.  Kidnapped victims also described seeing other

7   unidentified victims being held hostage and abused.  For example,

8   victim J.A.C. stated he saw "four other victims be physically abused

9   by the kidnappers."  Victim M.A. saw the kidnappers rape another,

10  unidentified, woman.  Victim D.D. saw 12 other kidnapped victims

11  inside the house, including a pregnant 19-year-old woman from

12  Guatemala.

13      The punishment requested also serves the purposes of general

14  deterrence.  The sentence makes clear that such ransom schemes cannot

15  be tolerated, even for those who do not directly kidnap the victims

16  and who attempt to insulate themselves from the direct violence.

17  These crimes are horrific, and too common.  Victims frequently do not

18  come forward.  A severe penalty will make clear that individuals such

19  as defendant, who play a role in these offenses, will be severely

20  punished.

21      Finally, the requested sentence does not result in any

22  unwarranted sentencing disparities.  Although Martinez received a

23  sentence 40 months, as the Court recognized at his sentencing, he was

24  very differently situated based on his early plea of guilty and

25  specific facts that set him apart from defendant, such as the absence

26  of concrete cell site data placing him at so many of the ransom

27  payments and the absence of corresponding evidence from a victim

28  directly imputing knowledge regarding the type of scheme.  The

8

1  government is requesting a 24-month sentence for Almendarez.

2  However, he too is differently situated given his minor role in the

3  scheme, in which he took direction from defendant.

4  **V.     CONCLUSION**

5      For the foregoing reasons, the government respectfully requests

6  that the Court sentence defendant to 10 years' imprisonment.   In

7  addition, the government respectfully requests the Court order

8  defendant to serve three years of supervised release and pay $125,980

9  in restitution.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28